*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* I. V. MELENDEZ, Minor.

UNPUBLISHED
August 20, 2019

Nos. 346849; 346851
Wayne Circuit Court
Family Division
LC No.  16-523785-NA

Before:  BECKERING, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother and respondent-father appeal as of right the trial court's order terminating their parental rights to their minor child, IM.  The court terminated respondent-mother's parental rights pursuant to MCL 712A.19b(3)(b)(*ii*), (g), and (j), and terminated respondent-father's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*).  Because there are no errors warranting relief in either appeal, we affirm.

Respondents have two children together, a daughter (LM), and a son (IM).  In April 2017, the trial court terminated respondents' parental rights to LM.  The court found that respondent-father had severely physically abused the 11-week-old child and that respondent-mother was complicit in the cover-up.  In September 2018, this Court affirmed that decision.[1]  While the appeal was pending, respondent-mother gave birth to IM, another child protective proceeding followed, and the court terminated respondents' parental rights to IM.  Thereafter, these appeals ensued.

Both respondents argue that the trial court erred by finding that the statutory grounds for termination were established by clear and convincing evidence.  In order to terminate parental rights, the trial court must find that at least one statutory ground for termination has been established by clear and convincing evidence.  *In re Trejo,* 462 Mich 341, 355; 612 NW2d 407

---

[1] *In re L L Melendez*, unpublished per curiam opinion of the Court of Appeals, issued September 18, 2018 (Docket Nos. 338076 and 338079).

(2000).  This Court reviews the trial court's findings under the clearly erroneous standard.  MCR 3.977(K).  A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed.  *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989).

The trial court terminated respondent-mother's parental rights to IM pursuant to MCL 712A.19b(3)(b)(*ii*), (g), and (j).  The trial court terminated respondent-father's parental rights to IM pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*).  These statutory grounds permit termination of parental rights under the following circumstances:

> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

> \* \* \*

> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> \* \* \*

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

> (k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:

> \* \* \*

> (*iii*) Battering, torture, or other severe physical abuse.

> (*iv*) Loss or serious impairment of an organ or limb.

> (*v*) Life-threatening injury.

Preliminarily, we note that the trial court erred in its application of § 19b(3)(g) to both respondents. This particular subsection was amended by 2018 PA 58, effective June 12, 2018. The current version of MCL 712A.19b(3)(g) replaces "without regard to intent" with "although, in the court's discretion, financially able to do so[.]" The permanent custody petition, filed on April 4, 2018, cited the preamendment version of the statute that was in effect at the time. In its order terminating parental rights, the court similarly relied on the preamendment language of the statute. However, both the hearing on the permanent custody petition occurred, and the resulting order terminating parental rights was entered, on October 18, 2018, well after the effective date of the amendment. Because the amendment became effective on June 12, 2018, the trial court erred by failing to make findings consistent with the amended statute. However, only one statutory ground is required to terminate parental rights. See *In re Trejo*, 462 Mich at 350. Because the trial court did not clearly err when it terminated respondent-mother's parental rights to IM pursuant to §§ 19b(3)(b)(*ii*) and (j), and did not clearly err when it terminated respondent-father's parental rights to IM pursuant to §§ 19b(3)(b)(*i*), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*),[2] the trial court's error does not warrant reversal.

Clear and convincing evidence established that IM's sibling, LM, was the victim of nonaccidental abuse. As a result of this abuse, LM suffered life-threatening injuries, including a fractured clavicle, retinal hemorrhaging, and bilateral subdural hematomas. LM sustained permanent damage to her brain and optic nerve and, as a consequence, her vision is permanently impaired and she will have long-term or permanent neurological deficits. In March 2017, respondent-father pleaded no contest to fourth-degree child abuse, a misdemeanor. The existing record provides clear and convincing evidence that LM was physically abused and respondent-father was the perpetrator.

There was also clear and convincing evidence to support the trial court's finding that there is a reasonable likelihood that IM will be harmed if returned to respondent-father's care. This Court has held that "how a parent treats one child is certainly probative of how that parent may treat other children." *In re AH*, 245 Mich App 77, 84; 627 NW2d 33 (2001) (citation omitted). From the existing record relative to LM, there was evidence that respondent-father became frustrated with his irritable infant, and took this frustration out by shaking her vigorously back and forth. Indeed, respondent-father admitted during the termination hearing regarding LM that he did, in fact, shake the child, although he asserted that he did so "gently." In the present case, there is no evidence that respondent-father has adequately addressed his anger management issues or his deficient parenting skills. While there was some evidence that respondent-father

---

[2] The introductory portion of § 19b(3)(k) was also amended by 2018 PA 58, effective June 12, 2018. As amended, § 19b(3)(k) now requires that the court find not only that the parent abused the child or a sibling of the child, but also, that "there is a reasonable likelihood that the child will be harmed if returned to the care of the parent." With respect to § 19b(3)(k), there does not appear to be any issue regarding whether the court applied the amended or preamendment version of the statute. The court, in its written opinion, specifically found that there "is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home."

expressed remorse over the events that caused injury to LM, there was no evidence that he sought out any services or treatment to address the issues that prevented him from controlling his anger. Moreover, respondent-father's actions during parenting time in this case raised concerns. When IM cried during supervised parenting time, respondent-father would become unusually flustered. The caseworker conceded that it was typical for a new parent to become flustered when a baby cried, but in her experience, respondent-father's response was uncommon because he became panicked every time IM cried. The evidence presented during the termination hearing established that respondent-father still cannot safely parent an infant. Accordingly, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent-father's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*).

Similarly, the court did not clearly err when it found clear and convincing evidence to terminate respondent-mother's parental rights. Despite overwhelming evidence of nonaccidental injury, respondent-mother maintained throughout the prior termination proceeding that she did not believe that respondent-father had harmed LM. Moreover, after her parental rights were terminated, respondent-mother continued in a relationship with respondent-father, and once again became pregnant by him. Following IM's birth, respondent-mother continued to reside with the newborn in the same home as respondent-father—a known child abuser. Even when Child Protective Services became involved, respondent-mother permitted respondent-father to live in the family home. Only when the petition was filed six weeks after IM's birth did respondent-mother make the decision to separate from respondent-father. Even during the current proceedings, respondent-mother could not affirmatively state a belief that respondent-father had harmed LM. When asked directly by the court if she believed that respondent-father had physically abused their oldest daughter, all respondent-mother could state was that it was "possible" that he had harmed LM.

In a belated attempt to dissociate herself from respondent-father's physical abuse of LM and her own complicity in the matter, respondent-mother testified in the present case that she and respondent-father had ended their relationship and were no longer cohabitating. The trial court found that respondent-mother's testimony was not credible, and there is ample evidence that supports this finding. The court correctly recognized that because respondents had been in a long-term relationship and respondent-mother was in denial regarding respondent-father's abuse, it was not plausible that respondent-mother simply ended the relationship when the petition was filed. Moreover, respondent-mother admitted that she went out of her way to drive respondent-father to parenting time visits. Although their visits with IM were one-on-one, because the appointments were scheduled back-to-back and the parents were only separated by a room partition, there were frequent exchanges between respondents during parenting time. Indeed, respondents relied on each other to assist with feeding and diaper changes. Respondent-mother testified glowingly about respondent-father's parenting of IM during visitation. Respondent-father was also heard using terms of endearment when speaking with respondent-mother. From these interactions, the trial court could reasonably conclude that the relationship endured and that respondent-mother was not credible when she made representations to the contrary. This Court must give due regard to the special opportunity of the trial court to assess the credibility of the witnesses who appeared before it. *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016).

-4-

The foregoing evidence demonstrated that respondent-mother was unable to recognize a known risk of harm to her children. More importantly, she was clearly unwilling to prioritize her child's needs ahead of her own. Under these circumstances, the trial court correctly concluded that respondent-mother was unable to protect her child from respondent-father and there existed a reasonable likelihood that IM would be harmed if returned to respondent-mother's care. Accordingly, the trial court did not clearly err when it found that clear and convincing evidence supported termination of respondent-mother's parental rights under §§ 19b(3)(b)(*ii*) and (j).[3]

Both respondents also challenge the trial court's finding that termination of their parental rights was in IM's best interests. Because a preponderance of the evidence supports the trial court's finding, we find no merit to these challenges.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Whether termination of parental rights is in the child's best interests must be proven by a preponderance of the evidence. *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013). We review for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones,* 286 Mich App 126, 129; 777 NW2d 728 (2009).

The court may consider several factors when deciding whether termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts,* 297 Mich App 35, 42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, the parent's continued involvement in domestic violence, and a parent's history. *In re Jones,* 286 Mich App at 131.

The trial court did not clearly err when it found that termination of respondent-mother's parental rights was in IM's best interests. IM's sibling was severely physically abused by respondent-father. The evidence further established that respondent-mother continued a relationship with him. Under these circumstances, it was apparent that IM's safety would be in jeopardy if returned to respondent-mother's home. Respondent-mother asserts that the bond that existed between her and IM weighed against terminating her parental rights. As evidence of this bond, respondent-mother testified that IM would become very excited when she and respondent-father arrived for parenting time. While a bond may have existed between respondent-mother and IM, this factor does not outweigh IM's need for a safe and stable home that is free from the threat of physical abuse.

Similarly, the trial court did not clearly err when it found that termination of respondent-father's parental rights was in IM's best interests. In a cursory fashion, respondent-father simply

---

[3] Both respondents complain that petitioner did not offer them reunification services. However, "[p]etitioner . . . is not required to provide reunification services when termination of parental rights is the agency's goal." *In re HRC,* 286 Mich App 444, 463; 781 NW2d 105 (2009).

argues that termination of his parental rights is not in IM's best interests because, since the filing of the petition, he has attended parenting time and behaved appropriately. Respondent-father completely ignores the fact that IM's older sister suffered horrific abuse and that he was the perpetrator of the abuse. LM will never be able to function independently and will require care for the rest of her life. Under these circumstances, the trial court did not clearly err when it found that termination of respondent-father's parental rights was in IM's best interests.

Given IM's young age, it is necessary that he be placed with someone who can provide a safe and nurturing home environment. The caseworker testified that IM was thriving in his foster home, that the foster parents were meeting his needs, and that they had expressed a desire to adopt IM. When balancing the best-interest factors, a court may consider the advantages of a foster home over the parent's home and the possibility of adoption. *In re Olive/Metts*, 297 Mich App at 41-42. It is clearly apparent that IM has been placed in a stable home where he is progressing and that this progress could continue as the foster parents had indicated a willingness to provide permanency for the child in their care. Accordingly, we are not convinced that the trial court clearly erred by finding that it was in IM's best interests to terminate respondents' parental rights.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Thomas C. Cameron